**FILED & ENTERED**

**JUN 25 2013**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY egarcia    DEPUTY CLERK**

# NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re: | Case No. 6:09-bk-10348-PC |
| ALAMEDA INVESTMENTS, LLC, | Chapter 11 |
| | **MEMORANDUM DECISION** |
| | Date:   June 12, 2013 |
| | Time:  9:30 a.m. |
| | Place:  United States Bankruptcy Court |
| | Courtroom # 1468 |
| Debtor. | 255 East Temple Street |
| | Los Angeles, CA  90012 |

Before the court is the Motion by Alameda Liquidating Trust for Order Determining that Membership Interest in West Lakeside LLC was Uneffected by Plan ("Motion"), together with the written opposition of Phoenix, LLC ("Phoenix") and AKT Investments, Inc. ("AKT"). Having considered the Motion and opposition thereto, the evidentiary record, and arguments of

counsel, the court makes the following findings of fact and conclusions of law pursuant to

F.R.Civ.P. 52(a),[1] as incorporated into FRBP 7052 and applied to contested matters by FRBP

9014(c).

## I.    STATEMENT OF FACTS

On January 9, 2009, Alameda Investments, Inc. ("Alameda") filed a voluntary petition

under chapter 11 of the Bankruptcy Code in the above referenced case.  Alameda's case was

jointly administered with the bankruptcy case of Woodside Group, LLC and its affiliated entities

(collectively, "Woodside").  On November 24, 2009, Woodside filed its Second Amended Joint

Plan of Reorganization of Woodside Group, LLC and Affiliated Debtors, as Modified on

November 24, 2009 (the "Plan").  Woodside's Plan was confirmed by order entered on

November 24, 2009 (the "Confirmation Order") and became effective at the close of business on

December 31, 2009 (the "Effective Date").

On the Effective Date, the Alameda Liquidating Trust was "established for the primary

purpose of liquidating and distributing Alameda's assets" pursuant to the Plan and terms of the

trust;[2] and except as specifically set forth in the Plan, all of Alameda's right, title and interest in

and to Alameda's assets was "irrevocably transferred, absolutely assigned, conveyed, set over

and delivered to the Alameda Liquidating Trust" for the benefit of the Alameda Trust

Beneficiaries.[3]

---

[1]  Unless otherwise indicated, all "Code," "chapter" and "section" references are to the
Bankruptcy Code, 11 U.S.C. §§ 101-1330 after its amendment by the Bankruptcy Abuse
Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005).  "Rule"
references are to the Federal Rules of Bankruptcy Procedure ("FRBP"), which make applicable
certain Federal Rules of Civil Procedure ("F.R.Civ.P.").  "LBR" references are to the Local
Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California
("LBR").

[2]  Request for Judicial Notice in Support of Motion by Alameda Liquidating Trust for
Order Determining that Membership Interest in West Lakeside LLC was Uneffected by Plan
("Trust RJN"), Ex. A, 77:3-4

[3]  Id. Ex. A, 79:16-25; Ex. D, 249.

On or about May 7, 2003, Alameda, Phoenix and AKT executed a document entitled "Operating Agreement West Lakeside, LLC, a California Limited Liability Company" for the development of a 133-acre tract of land in Sacramento County, California.[4]  In 2004, Alameda, Phoenix and AKT executed an Amended and Restated Operating Agreement West Lakeside, LLC, a California Limited Liability Company (the "Operating Agreement").[5]  Paragraph 16.1 of the Operating Agreement for West Lakeside, LLC ("West Lakeside") entitled "Prohibition Against Transfer" states, in part:

> **16.1.1.  Basic Prohibitions.**  Alameda has entered into this Agreement because of the trust and confidence it places in Angelo K. Tsakopoulos, the sole owner of AKT, and AKT and Phoenix have entered into this Agreement because of the trust and confidence they place in Alameda and its affiliates (collectively, the "**Alameda Group**").  The Alameda Group includes Alameda, Woodside Group, Inc., a Nevada corporation, Danville Land Investments, LLC, a Nevada limited liability company, Pleasant Valley Investments, LC, Woodside Homes, and other related entities.  In light of the parties' reliance on the continuing interests of the other Members, except as provided in this Section 16.1 and in Article XV, none of the following sales, transfers, assignments or hypothecations (individually and jointly, a "**Transfer**") shall be permitted without the prior written approval of a Majority of the Members, and any such attempted Transfer shall be void and ineffectual:  (i) a Transfer, directly or indirectly, for consideration or gratuitously, by a Member or its successors or assigns, of all or any portion of its Member Interest or Economic Interest; (ii) a Transfer of any of beneficial interest of a Member to any other individual or entity other than its constituent owners as of the date of execution of this Agreement; or (iii) a Transfer which results in a change in the "**Principal Owner**" of the Member or Member Group, as applicable.  Each Member shall inform the other as of the execution of the Agreement of its constituent owners.[6]

The parties essentially concede that at the time of confirmation of Woodside's Plan, Alameda and Phoenix each owned a 50% membership interest in West Lakeside and AKT was the Managing Member of West Lakeside under the Operating Agreement.[7]

---

[4]  Motion (Scheffy Decl.) Ex. 1, 22.

[5]  Id. Ex. 2, 80.

[6]  Id. Ex. 2, 108.

[7]  Prior to January 8, 2008, Alameda's interest "was putatively transferred" to Liberty Holdings Group, LLC, but that purported transfer was reversed pursuant to the confirmed Plan

After the Effective Date, a dispute arose between Alameda, Phoenix and AKT as to the nature and extent of the interest in West Lakeside received by the Alameda Liquidating Trust (the "Trust") under the Plan.  The Trust asserts that because the Operating Agreement is not an executory contract, the Trust "is entitled to the same membership interest and benefits in West Lakeside to which Alameda was entitled prior to the filing of the bankruptcy case or the confirmation of the Plan."[8]  AKT and Phoenix disagree, arguing that the Trust received at best only an "economic interest"[9] in West Lakeside on the Effective Date and that the membership interest in West Lakeside "was never assigned to the Trust[,] nor could it have been without a majority vote of the non-transferring Members."[10]  After a hearing on June 12, 2013, the court took the matter under submission.

## II.  DISCUSSION

This court has jurisdiction over these contested matters pursuant to 28 U.S.C. §§ 157(b) and 1334(b).  This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).  Venue is appropriate in this court.  28 U.S.C. § 1409(a).  "A bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders, particularly when disputes arise over a bankruptcy plan of reorganization."  Luan Inv., S.E. v. Franklin 145 Corp. (In re Petrie Retail,

---

and the Alameda Liquidating Trust was vested with all of Alameda's right, title and interest in West Lakeside on the Effective Date.  See  Id. 15:23 – 16:1.

[8]  Motion 1:19-22.

[9]  "Economic Interest," as used in the Operating Agreement, means "the right to receive distributions of the Company's assets and allocations of income, gain, loss, deduction, credit and similar items from the Company pursuant to this Agreement and the Act, but shall not include any other rights of a Member, including, without limitation, the right to vote or participate in the management, or, except as provided in Section 17106 of the Corporations Code, any right to information concerning the business and affairs of the Company."  Id. (Scheffy Decl.) Ex. 2, 123.

[10]  AKT Investments, Inc.'s Memorandum of Points and Authorities in Opposition to Motion by Alameda Liquidating Trust for Order Determining that Membership Interest in West Lakeside LLC was Uneffected by Plan ("AKT Opposition")  2:4-5; 6:21-23; Opposition to Motion by Alameda Liquidating Trust for Order Determining that Membership Interest in West Lakeside LLC was Uneffected by Plan ("Phoenix Opposition") 8:16-9:18.

Inc.), 304 F.3d 223, 230 (2nd Cir. 2002) (citations omitted); see Sea Hawk Seafoods, Inc. v. State of Alaska (In re Valdez Fisheries Dev. Ass'n, Inc.), 439 F.3d 545, 549 (9th Cir. 2006) (stating that a court has ancillary jurisdiction "to vindicate its authority and effectuate its decrees").

A.  The West Lakeside Operating Agreement is Not an Executory Contract

"An executory contract is one 'on which performance remains due to some extent on both sides.'"  Unsecured Creditors' Comm. v. Southmark Corp. (In re Robert L. Helms Const. & Dev. Co., Inc.), 139 F.3d 702, 705 (9th Cir. 1998) (citation omitted); see also Everex Sys., Inc. v. Cadtrak Corp. (In re CFLC, Inc.), 89 F.3d 673, 677 (9th Cir. 1996) (stating that an executory contract is "'a contract . . . on which performance is due to some extent on both sides' and in which 'the obligations of both parties are so far unperformed that the failure of either party to complete performance would constitute a material breach and thus excuse the performance of the other.'" (citation omitted)).  Whether a contract is executory within the meaning of the Bankruptcy Code is determined under federal law.  Otto Preminger Films, Ltd. v. Qintex Enters., Inc. (In re Qintex Enters., Inc.), 950 F.2d 1492, 1495 (9th Cir. 1991).

Alameda asserts that the Operating Agreement is not an executory contract.  Phoenix does not disagree.  AKT responds that it "has never been AKT's position" that the Operating Agreement is an executory contract[11] because "the Trust is not entitled to a Membership Interest in West Lakeside regardless of whether the Operating Agreement is or isn't executory."[12]  However, AKT then proceeds to make "[a] more than colorable argument" that the Operating Agreement is, in fact, an executory contract "based on the numerous provisions that require a vote of the majority of the Members."[13]

---

[11]  AKT Opposition 9:5.

[12]  Id. 9:13-13.

[13]  Id. 9: n.26.

The issue of whether or not an operating agreement is an executory contract is

determined on a case by case basis.  See Meiburger v. Endeka Enters., L.L.C. (In re Tsiaoushis),

383 B.R. 616, 618 (Bankr E.D. Va. 2007) ("Courts considering whether an operating agreement

is an executory contract [must look] . . . at the facts and circumstances of each case to determine

the status of a particular operating agreement."), aff'd, 2007 WL 2156162 (E.D. Va. July 19,

2007).

> Each operating agreement is separately analyzed.  The courts . . . examine the
> operating agreement to determine whether there are unperformed obligations on
> the part of the parties.  If not, the operating agreement is not an executory
> contract.  If there are unperformed obligations of both the debtor and the other
> party or parties, the court must determine whether, if not performed, non-
> performance would constitute a material breach excusing the other party from
> further performance.  If so, the operating agreement is an executory contract.

Id. at 620 (citations omitted).

The Operating Agreement is not an executory contract.  Alameda had no outstanding

performance due under the Operating Agreement on the date of bankruptcy.  Alameda had no

role in the management of West Lakeside, and no obligation to provide any personal expertise or

service to the company.  Alameda had made all required capital contributions prior to the petition

date.  There is no evidence that Alameda had any continuing fiduciary obligations under the

agreement.  AKT argues that an operating agreement can be executory if "material events

requiring the debtor to vote [are] imminent[,] and the debtor [has] an obligation to participate in

good faith," citing In re Strata Title, LLC, 2013 WL 1773619, *2 (Bankr. D. Ariz. April 25,

2013).[14]  The court in Strata Title determined that the operating agreement at issue in that case

was an executory contract based on (a) certain "supermajority" voting requirements contained in

the agreement, and (b) the fact that current circumstances, including the marketing of property

held by the LLC and the impeding removal of the manager, would soon require the debtor to

perform such voting duties.  Id.  But even the court in Strata Title acknowledged that "remote

possibilities of future obligations do not make a contract executory."  Id. citing In re Capital

---

[14] Id.

Acquisitions & Management Corp., 341 B.R. 632, 636 (Bankr. N.D. Ill. 2006).  See Movitz v. Fiesta Inv., LLC (In re Ehmann), 319 B.R. 200, 204 (Bankr. D. Ariz. 2005) (holding that an operating agreement for a limited liability company was not an executory contract despite a provision granting members "the right to approve by majority vote the sale, exchange or other disposition of all or substantially all of the company's assets").

West Lakeside members have a right to vote under Article 9 of the Operating Agreement. However, the matters on which members are entitled to vote are specifically limited by § 9.1.2 and the existence of such a limited voting right does not, of and by itself, make the Operating Agreement executory.  There is no evidence of facts demonstrating that an upcoming vote within the scope of § 9.1.2 of the Operating Agreement is imminent or likely nor that the failure of a member to vote would constitute a material breach of the Operating Agreement excusing other parties thereto from performance.  Indeed, West Lakeside's only asset is the 133-acre tract of land that may be years away from development.[15]  West Lakeside has no income.  It has made no distributions and is not scheduled to make a distribution in the foreseeable future.[16]

B.  Alameda's Membership Interest in West Lakeside was Transferred to the Trust

During oral argument, AKT's counsel stated that the executory contract issue is a "red herring."  The question of whether or not the Operating Agreement is an executory contract, according to AKT, is a distinction without a difference.

Section 16.1.1 of the Operating Agreement expressly states that a transfer by a member of the member's interest in West Lakeside (Member Interest or Economic Interest) without the prior written approval of a majority of the members is void.[17]  Section 17301(a)(1) of the California Corporations Code also provides that "[e]xcept as provided in the articles of organization or the operating agreement . . . [a] membership interest or an economic interest is

---

[15]  Omnibus Reply by Alameda Liquidating Trust to Oppositions of AKT Investments, Inc. and Phoenix, LLC to Motion for Order Determining that Membership Interest in West Lakeside LLC was Unaffected by Plan ("Reply") (Scheffy Decl.) ¶ 20.

[16]  Id.

[17]  See note 6 supra.

assignable in whole or in part, provided, however, that no membership interest may be assigned

without the consent of a majority in interest of the members not transferring their interests . . . . "

Cal. Corp. Code § 17301(a)(1).

AKT and Phoenix concede that Alameda's <u>entire</u> interest (membership, economic or

otherwise) in West Lakeside became property of the estate under § 541(a) upon the filing of

Alameda's bankruptcy petition.[18]  However, AKT and Phoenix argue that Alameda's authority to

transfer its <u>entire</u> interest in West Lakeside <u>out</u> of the estate to the Trust under the Plan was

limited by the terms of the Plan and Confirmation Order, the Operating Agreement, and state

law, and that the Trust received no more than an economic interest in West Lakeside on the

Effective Date.

With respect to the Plan, AKT and Phoenix maintain that the following language in

section 8.4 of the Plan discussing the effect of the Confirmation Order expressly limits the

Trust's interest, if any, in West Lakeside to an economic interest:

> **8.4  Effect of Confirmation Order.**  The Confirmation Order shall constitute an
> order of the Bankruptcy Court:  (i) approving, as of the Effective Date, the
> assumption or rejection by the Reorganized Debtors, Liberty or Alameda, as the
> case may be, pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code,
> all of executory contracts and unexpired leases identified under this Article 8 of
> the Plan; and (ii) that any provisions of a limited liability company agreement or
> operating agreement of a limited liability company or similar entity which
> purports to restrict the transfer of the **economic interest** in such entity to one of
> its members which is one of the Debtors herein, or its assignee, is invalidated as
> an '*ipso facto*' clause under Section 365(e) of the Bankruptcy Code, to the extent
> that Section 365 applies.  The contracts and leases identified in this Plan will be
> assumed or rejected, respectively, only to the extent that such contracts or leases
> constitute pre-petition executory contracts or unexpired leases of the Debtors, and

---

[18] Section 541(c)(1)(A) preempts the anti-assignment provisions of the Operating
Agreement and the impact of Cal. Corp. Code § 17301(a)(1).  Property of the debtor enters the
estate upon the filing of the petition "notwithstanding any provision in an agreement, transfer
instrument, or applicable nonbankruptcy law…that restricts or conditions transfer of such interest
by debtor." 11 USC § 541(c)(1)(A).  "Section 541(c)(1)(A) overrides both contract and state law
restrictions on the transfers or assignment of Debtors' interest in [property] in order to sweep all
their interests into their estate." <u>Fursman v. Ulrich (In re First Protection, Inc.)</u>, 440 B.R. 821,
830 (9th Cir. BAP 2010).

the identification of such agreements under this Plan does not constitute an admission with respect to the characterization of such agreements or the existence of any unperformed obligations, defaults, or damages thereunder.  This Plan does not affect any executory contracts or unexpired leases that: (a) have been assumed, rejected or terminated prior to the Confirmation Date, or (b) are the subject of a pending motion to assume, reject or terminate as of the Confirmation Date.[19]

Identical language regarding the effect of the Confirmation Order on the assumption, rejection or termination of executory contracts and unexpired leases is contained in paragraph (F)(3) of the Confirmation Order.[20]

By their respective terms, section 8.4 of the Plan and paragraph (F)(3) of the Confirmation Order deal specifically and exclusively with executory contracts and unexpired leases.  Having determined that the Operating Agreement is not an executory contract, the court finds section 8.4 of the Plan and paragraph (F)(3) of the Confirmation Order inapplicable to the Operating Agreement.  Neither provision limited the interest in West Lakeside transferred by Alameda to the Trust on the Effective Date.  Because the Operating Agreement is not an executory contract, § 365 is inapplicable and the court must analyze under § 541 whether Alameda's transfer to the Trust of its entire interest in West Lakeside failed by virtue of § 16.1.1 of the Operating Agreement and applicable state law.  See, e.g., Sheehan v. Warner (In re Warner), 480 B.R. 641, 652 (Bankr. N.D. W.Va. 2012) ("Because § 365 does not apply . . . [t]he court must now examine what property rights of the Debtor entered his estate under § 541(a), and whether § 541(c) acts to bring those rights into his bankruptcy estate notwithstanding the Operating Agreement . . . ."); Ehmann, 319 B.R. at 206 ("Because there are no obligations imposed on members that bear on the rights the Trustee seeks to assert here, the Trustee's rights are not controlled by the law of executory contracts and Bankruptcy Code § 365 . . . [but] are controlled by the more general provision governing property of the estate, which is Bankruptcy Code § 541.").

---

[19]  Trust RJN Ex. A, 97:10-25 (emphasis added).

[20]  Id. Ex. D, 254.

With respect to § 16.1.1 of the Operating Agreement and Cal. Corp. Code § 17301(a)(1), AKT argues that "[t]he Trust is operated by an independent trustee, unbeholden to Alameda and subject only to the oversight of a supervisory board whose members represent the creditors, not Alameda."[21]  According to AKT, "[i]t is beyond peradventure that Alameda and the Trust are distinctly different and separate entities, and as such the Trust is unquestionably subject to the prohibition on transfers contained in the Operating Agreement."[22]  The court disagrees.

"'[N]onbankruptcy law defines the nature, scope, and extent of the property rights that come into the hands of the bankruptcy estate.  Gumport v. Sterling Press (In re Transcon Lines), 58 F.3d 1432, 1438 (9th Cir. 1995), cert. denied, 516 U.S. 1146 (1996); see State of Cal. v. Farmers Markets, Inc. (In re Farmers Markets, Inc.), 792 F.2d 1400, 1402 (9th Cir. 1986) (holding that § 541(c)(1) did not preclude the enforcement of Cal. Bus. & Prof. Code § 24049 against a debtor in bankruptcy to prevent a sale of a liquor license to a third party without paying the relevant tax).  "'[T]he estate succeeds to no more interest than the debtor had, and the estate takes its interest subject to the conditions under which the debtor held the interest.'"  In re South Side House, LLC, 474 B.R. 391, 402 (Bankr. E.D.N.Y. 2012), citing Kipp v. Depoy (In re Depoy), 29 B.R. 466, 469 (Bankr. N.D. Ind. 1983).

Even if the court were to find that either the Operating Agreement or § 17301(a)(1) of the California Corporations Code restricted the transfer of Alameda's interest in West Lakeside to a third party, the Alameda Liquidating Trust is not a third party.  See Motor Vehicle Cas. Co. v. Thorp Insulation Co. (In re Thorpe Insulation Co.), 677 F.3d 869, 890 (9th Cir. 2012) (holding that the creation of a trust under a confirmed plan for the purpose of resolving certain asbestos-related claims was not a transfer to a third party in violation of a contractual anti-assignment clause).  As previously stated, the Alameda Liquidating Trust was established for the purpose of liquidating and distributing Alameda's assets pursuant to the Plan and terms of the trust.  The Plan states specifically:

---

[21]  AKT Opposition 12:8-10.

[22]  Id. 12:11-14.

On the Effective Date, <u>the Alameda Liquidating Trustee shall be the
representative of the Alameda Estate within the meaning of Section 1123(b)(3)(B)
of the Bankruptcy Code</u>[23] and shall have the rights and powers provided for in the
Bankruptcy Code in addition to any rights and powers granted in the Alameda
Liquidating Trust and herein.  The Alameda Liquidating Trustee shall be a party
in interest as to all matters over which the Bankruptcy Court has jurisdiction.

In his or her capacity as the Estate representative of the Alameda Estate, . . . the
Alameda Liquidating Trustee shall be the successor-in-interest to Alameda with
respect to any Claim, right or Cause of Action and Defense that was or could have
been commenced by Alameda prior to the Effective Date, or thereafter arising in
conjunction with any Alameda Trust Assets until the Alameda Liquidating
Trustee disposes of them.[24]

<u>Thorpe</u> is dispositive.  Under the Plan and Confirmation Order, the Alameda Liquidating Trustee

is the estate representative of the Alameda Estate.  As such, the Alameda Liquidating Trust holds

Alameda's <u>entire</u> interest (membership, economic, and otherwise) in West Lakeside under the

Operating Agreement as the estate representative, and that interest was not diluted on the

Effective Date by either the anti-assignment provisions of § 16.1.1 of the Operating Agreement

or § 17301(a)(1) of the California Corporations Code.

<u>CONCLUSION</u>

Based upon the foregoing, the court concludes that (1) the Operating Agreement is not an

executory contract nor was it rejected as an executory contract under the Plan and Confirmation

Order; (2) the Alameda Liquidating Trust succeeded to Alameda's entire interest in West

Lakeside under the Operating Agreement as the estate representative under the Plan and

Confirmation Order; and (3) the Alameda Liquidating Trust enjoys the same Alameda

Membership Interest in West Lakeside which Alameda had prior to bankruptcy.

---

[23] Section 1123(b)(3)(B) states:  "Subject to subsection (a) of this section, a plan may . . .
provide for . . . the retention and enforcement by the debtor, by the trustee, or <u>by a representative
of the estate appointed for such purpose</u>, of any such claim or interest."  11 U.S.C. §
1123(b)(3)(B) (emphasis added).

[24] Trust RJN Ex. A, 78 (emphasis added).

1

      The Trust shall lodge a proposed order granting the relief requested in the Motion

2

consistent with this Memorandum Decision.[25]

3

                ###

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

   Date: June 25, 2013

25

Peter H. Carroll
United States Bankruptcy Judge

26

27

28

[25] The Trust seeks an order prohibiting AKT or Phoenix from interfering in the liquidation of its interest in West Lakeside under the Operating Agreement. Motion 13:14-15. The requested relief is in the nature of an injunction which the court declines to grant absent an adversary proceeding.  See FRBP 7001(7); LBR 7065-1.

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*):   **Memorandum Decision**  was entered on the date indicated as Entered on the first page of this judgment or order and will be served in the manner stated below:

**1.    SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)** в Pursuant to controlling General Orders and LBRs, the foregoing document was served on the following persons by the court via NEF and hyperlink to the judgment or order. As of (*date*) 06-25-2013 , the following persons are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email addresses stated below.

- Linda F Cantor    lcantor@pszjlaw.com, lcantor@pszjlaw.com
- Brian L Davidoff    bdavidoff@greenbergglusker.com, jreinglass@greenbergglusker.com;kwoodson@greenbergglusker.com;calendar@greenbergglusker.com;sgaeta@greenbergglusker.com
- Irving M Gross    img@lnbrb.com, angela@lnbrb.com
- Matthew B Holbrook    mholbrook@sheppardmullin.com, mmanns@sheppardmullin.com
- John J Immordino    john.immordino@wilsonelser.com, raquel.burgess@wilsonelser.com
- Ivan L Kallick    ikallick@manatt.com, ihernandez@manatt.com
- Jeffrey A Krieger    jkrieger@ggfirm.com, kwoodson@greenbergglusker.com;calendar@greenbergglusker.com;pporooshani@greenbergglusker.com
- Robert S Marticello    Rmarticello@wgllp.com, msciesinski@wgllp.com
- C John M Melissinos    jmelissinos@greenbergglusker.com, jreinglass@greenbergglusker.com;kwoodson@greenbergglusker.com;calendar@greenbergglusker.com;sgaeta@greenbergglusker.com
- Mark Minuti    mminuti@saul.com
- Eric A Nyberg    e.nyberg@kornfieldlaw.com
- Eric S Pezold    epezold@swlaw.com, dwlewis@swlaw.com
- Jeremy V Richards    jrichards@pszjlaw.com, bdassa@pszjlaw.com;imorris@pszjlaw.com
- Chad L Schexnayder    cls@jhc-law.com, sh@jhc-law.com
- Jason K Schrader    jason.K.Schrader@usdoj.gov
- Mark A Serlin    mserlin@globelaw.com
- Kenneth J Shaffer    jshaffer@stutman.com
- United States Trustee (RS)    ustpregion16.rs.ecf@usdoj.gov
- Michael A Wallin    mwallin@sheppardmullin.com
- Michael R Williams    mwilliams@fwtrl.com, wmills@fwtrl.com

☐    Service    information continued on attached page

**2.    SERVED BY THE COURT VIA UNITED STATES MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States mail, first class, postage prepaid, to the following persons and/or entities at the addresses indicated below: